We'll turn to our next case, which is Winston v. City of Syracuse. Good morning, and may it please the Court. This is a case about the City of Syracuse's Water Service Debt Collection Scheme, a scheme which totally divorces itself from the reality of legal accountability for the debt involved. Help me understand something. As I look at the record, you won below on an as-applied constitutional challenge, right? That's correct, Your Honor. And then you gave that up to come and appeal your due process and substantive due process claims here. I just don't understand that. You had a road to the result you wanted, which appears to me that you just discarded. I'm sure there's something I'm missing. Help me understand. Right. Your Honor, this is a case just for a declaratory and injunctive relief change to the City's policies. The as-applied challenges were just applied to Ms. Winston in that Judge McAvoy's decision said that it was irrational for them to not let her pay her landlord's water bill. Our position here and our position from the outset is it's irrational for the City to hold Ms. Winston accountable for her landlord's water bill. Okay. So her water was off for three days. Is that right? That's correct, Your Honor. Three days. And she's still in the apartment? She's still in the apartment. How did she get the water turned back on? The landlord... Does the record reflect that? I don't believe the record reflects that, Your Honor. Outside of the record, the landlord eventually paid the water bill three days after. For three days, her and her family were left without water because her landlord failed to pay the water bill. Did the landlord pay the bill? Landlord eventually paid the bill. I mean, after three days. After three days. I mean, I don't mean to minimize the inconvenience. Okay. Right, Your Honor. And I think a good point in that is three days without water. For three days, Ms. Winston and her young autistic child were left without water. Right. But there's no claim for damages for that, is there? That's correct, Your Honor. But I think that really demonstrates the irrationality of the City's policy. To hold a family and a young girl with autism as a pawn in some debt collection scheme, a debt which they had absolutely no connection to, no legal obligation. Suppose she owned the house. She would still have an autistic child. She would still suffer for the inability to pay the bill, right? If she was, it took her three days as the owner of the house and resident of the house to come up with the money. You have no problem with the City turning off the water. In fact, you say it's irrational to create these classes to the disadvantage of the tenant. So you're assuming that it would be proper. There's no fundamental right to water service such that this is a constitutionally excessive thing to do to somebody who doesn't pay the bill. Is that right? I think the distinction factor for the, if she owned the house. Yes. Is she would have a legal obligation to pay the water bill. She would be able to contract. But she still doesn't have a legal obligation to pay the water bill. The landlord has the legal obligation. If Ms. Winston owned the house, Your Honor? No. If she as the tenant has no legal obligation to pay the bill. Right. She has no legal obligation to pay the bill.  That puts her at the situation Ms. Winston was left with. Either she was the tenant or the landlord. I'm just saying you are not making an argument that there is a fundamental Right to water, sir. No, we're not making that argument, Your Honor. I don't think this court has ever. You're saying it's irrational for the city to have a scheme that makes the, that they will contract with the landlord only, and then the landlord is, they'll cut off the water if the customer, the landlord, doesn't pay. In one instance, that would be our equal protection, just similarly situated landlord versus tenant argument. That's one part of our argument. We think it's irrational for them to make. And why is it irrational for the city to have a policy that maximizes the likelihood that they will get paid for the water service and maximizes the likelihood that the, yeah, that the water will get turned back on and the bill will be paid? We dispute whether or not it would maximize their, they would have two options if they contracted with tenants. They'd be able to collect from the tenant and they'd also be able to collect from the landlord. But if the court doesn't want, is suspect of that classification, there's also the tenant v. tenant similar situated classification, which is a different argument in that we're not saying. There's no difference between, it's irrational to distinguish between landlords who don't pay the bill and landlords who do? Yeah. I mean, insofar as tenants, the city's policies put tenants in a difficult position. There's two types of tenants based on the city's policies. Landlords whose tenants, tenants whose landlords pay the bill. If they get to. If the tenant paid the bill, would the tenant under New York law or under any Syracuse ordinance have a right to set off the payment against the rent? Right. And the ordinances say that, Your Honor, but I think putting the onus on a tenant. I'm not sure why that's an onus unless the bill is so far in excess of a monthly rent that the, no one could be expected to come up with the money. If you have to pay the rent anyway, and you pay a part of that money to cover the water bill, and then you reduce your rent bill by that, what exactly is the problem? Right. I think the reality in that situation, Your Honor, is that tenant who didn't pay the full amount of rent would be getting a three-day demand for rent and be, face eviction proceedings pretty soon. But they're going to have to pay, theoretically, at least for other tenants' share, too. In other words, the landlord's water bill isn't paid, and the landlord may have ten units. And so, it's not just her portion of it that she has to go to town hall and pay. She has to pay for the whole water bill for that month, which includes other tenants, right? That's correct, Your Honor. In an apartment building with five units, and there's one meter, she'd be paying for the, not only her usage, but also the four other homes' usage. How could the city contract with the individual tenant? There would have to be an individual metering system then. The city could contract with them, and there could be an individual metering system, and they could then put that cost to the landlord. So are you saying, is that the relief you're seeking, that there's a constitutional right to have individual metering for tenants in multiple dwellings? No, Your Honor. What we're just seeking is that the city's policies, which hold innocent tenants we're not saying that they have to, whatever scheme that they create, we're not saying they have to contract. We're saying that it's irrational to hold people who have no legal obligation to pay the debt responsible for the debt. We're not saying that Ms. Winston is not holding them responsible. You're looking for declaratory relief, right? That's correct, Your Honor. Well, what would the relief say? That the city of Syracuse's ordinance violate equal protection in the sum of the due process. And then what would you want in the nature of a remedy? We'd want the city to stop holding tenants responsible for the debts of their landlord. We're not asking that the city require or let tenants put water strips in their own name. That's part of it. Under your scheme, how is the city, who is the city then to collect from, the individual tenants or the landlords? The landlords. Solely the landlords. Under our scheme, tenants would no longer be held responsible for debts which they have no legal obligation to pay. And I think that squares with the four other circuits that have addressed this issue. Those circuits held that it's not rational to hold someone who has no legal obligation to pay a debt responsible for it. Suppose the landlord doesn't pay the heating oil bill and the company that delivers heating oil cuts off service. And the, I would guess if that happens in February in Syracuse, the house quickly becomes uninhabitable. That's correct. I mean. And the tenant would be in the same position as here, right? The tenant conceivably could pay the heating oil bill and get the heat turned back on if the landlord was irresponsible and then set that off against the rent. And if there were multiple tenants, they could band together and do that. Or they'd just be stuck. Right? I think those are all plausible. So the difference is, and I take it, so the difference is that because the city is governmental, it can't do with its proprietary water system what a private company could do. I think that distinguishes it from, say, a utility service. So if the city decided to turn the water over to a private company, that would also solve the problem. I don't know if it would, Your Honor. And I think another distinguishing factor would be not only is, I mean, this is water service. This is really a necessity of life for families. Well, that's why I picked heating oil in the winter in Syracuse or even in the sunny southern climes of New York City, for that matter. That's equally a necessity, isn't it? Right. And the electric service could be turned off by whatever is the Syracuse equivalent of Con Edison. And that might even, depending on how the building is served, well, I guess maybe not with a municipal system. If they had a well, that might cut off the water, too, if they cut off the electricity. And that would render the house uninhabitable, and the tenant would be stuck there, too. I think another probably more important difference is tenants can contract with our utility in Syracuse to get service in their own name. So they're left with another remedy. Here they're – That's in only buildings where they have individual meters, right? Right. So part of the remedy that would make your scheme work or make any sense would be to require every multiple dwelling in Syracuse to have an individual water meter. I don't think that would have to be part of the scheme. I mean, that's certainly one solution the city could come up with if this court chooses to strike down. Well, the other solution would be just to continue to provide water and then pursue their legal remedies against the landlord. Or they could put it as a lien on the property, or they could create an escrow system. A lien is no good unless you enforce the lien. I mean, they put a lien on the property, and then the landlord still doesn't pay. The way they collect is by foreclosing on the lien and taking over the building. Right. That's the way they get paid. But they would have other remedies. Right. But that's what you're saying is they should be relegated to that remedy. They can't use the self-help remedy. Because they're a governmental agency, they can't use the self-help remedy that the heating oil company or the electric utility could use. Right. But, I mean, as I mentioned, the other distinguishing factor is tenants can contract for natural gas. Well, only if the utility chooses to allow them to do that. If they don't feel like they have the same economic analysis that the city does, they might follow the same kind of policy, mightn't they? I mean, it's possible. But, I mean, I think the important factor here, and with the four other circuits who addressed this issue, actually, I see my time is done. May I just? Sure. Go ahead. Can I take a minute? Go ahead. Yeah. The four other circuits which addressed this issue have found is that it's simply irrational to hold someone who has no legal obligation to pay the debt, account them for the debt. And in Ms. Winston's case, to use her as a pawn as a way to get at either her paying the debt or her landlord paying the debt for something she has no legal obligation to pay. Thank you. Thank you. You've got a couple minutes. You've reserved. Ms. Harrington? May it please the Court, my name is Amanda Harrington. I'm an Assistant Corporation Counsel for the City of Syracuse. I'd like to first begin by actually taking a step back and actually talking about the facts of this case and the policy, because I think it's been mischaracterized through the course of this discussion. So, Ms. Winston, in this case, received a notice that said that her water was going to be shut off. The water notice, as outlined in the brief that we provided, indicates that there is a hearing process that she can avail herself of and call to prevent the water from being turned off. Ms. Winston decided... But she would have lost, right? But she went to the maintenance guy twice and said, oh, yeah, don't worry about it, and then it gets shut off. Well, she went to her own maintenance. What's going to happen at the hearing? They're not going to say, you've got to pay the whole bill. At minimum, the hearing would at least delay the process of turning the water off. So the distinction that I think is important to make is that the tenant, at any point before the water is turned off, can pay the bill and can reinstate water use. This woman is working at, you know, Shake Shack and cleans homes to supplement her income, and is supposed to take off and go down to a hearing in respect of a bill she's paid, and the agent for the building has said, don't worry about it, we'll take care of it. Is that what's supposed to happen in Syracuse? Well, what happens is the individual has the right to request a hearing. So that would at first initially delay this process. So you're saying it's an adequate remedy that you can apply frivolously for a hearing on whether the bill has been paid when you know it hasn't been, solely in order to get delay, and that's an adequate remedy for the deprivation of what you concede for purposes of this appeal as a property right? I don't believe that I'm saying that that is the way to handle it. Let me back up and explain it better. Back way up. Okay. So the hearing itself, I'm not saying that requesting a hearing frivolously or not is the remedy, but requesting the hearing at least gives whoever is in the situation time to contact their actual landlord, not a maintenance person or someone else in the building. So they can at least reach out to the proper party who's responsible. In most cases it's going to be an LLC. Well, and I guess that raises another point is it's been characterized that the tenant, that somehow the city is forcing the tenant to pay. What we're saying is that anyone has the right to pay this bill up until the point that the water has been turned off. So that can be property management. Santa Claus. Well, the city doesn't believe that Santa Claus is going to descend and pay everybody's water bills. And probably neither is whoever holds the mortgage on the landlord's property, right? They don't have any interest in the water bill. And many times what happens with these shutoff notices is that there's a property management company that's involved that's usually paying the bills. Someone changed an address or a manager changed. And so these landlords to some extent require or rely on their tenants reporting when they receive these notices because they're not receiving them themselves or there's been some mix-up in the process. But you did contact the agent for the landlord. And nothing in this record tells you that that person is not the right person for her to contact. Well, no. No one tells us that there's any other person she could have called. Well, I think that the proper person to call would have been her landlord who's responsible for the bill. But if, as Judge Parker suggested, the landlord is a closely held corporation, isn't it some manager, managing agent typically? If we're at multiple dwelling, that would usually be the case, right? Sure. And is there something in this record that says she called the wrong guy? Not to mention why do we care about this? Because you're now arguing the individual case, which is no longer before us, rather than the facial policies. I guess I was trying to set the stage in terms of what the actual policy is because the policy does not in and of itself force any tenant to pay the rent. The policy, and what my argument was, was that in this case, Ms. Winston. I think I agree with you 100%. There is no legal obligation on the tenant to pay anything. What Mr. Cotter is arguing I think boils down to what he said at the very end. The city is using the tenant as a pawn by inflicting hardship on the tenant in the hope that the hardship on the tenant will get the landlord to fulfill the landlord's obligations. So my original intent with backing up was to point out that what Mr. Cotter has pointed out as the result of the policy or as her submitting to the policy, which was the effect of her getting her water turned off, is a consequence of not submitting to the policy by not availing the remedies that the city has in place. So the hearing is the first remedy that is in place. I thought there was an individual claim that she tried to pay the bill and the city didn't take it. Once the water is turned off, a tenant does not have the legal right within the city of Syracuse to turn back on utilities if they're not the property owner. Let's say hypothetically the overdue bill was $50 and you get a turnoff notice. So is it the city of Syracuse's position that a woman, say, a man, essentially in the hypothetical I put to you, has to go through the process of requesting and attending a hearing in respect of a $50 bill that's already been paid? And the consequences of not going through all of that is that you are relegated to an uninhabitable apartment as a consequence of the water being turned off. I don't think that we're limited to those extremes. I think that in the process of requesting the hearing, like I said, that initially at least buys time. And that person, if the landlord, in this case, there's no indication. She's lived in the same apartment for 10 years. There's no indication that this landlord ever had an issue before in paying the water bill. So this could have been the one-off instance that I was describing before. In that case, the proper or I guess the best case for that person is to contact their landlord and hope that their landlord sorts it out. The city's position is that we can't get involved in the intermixings between a tenant and a landlord. And the options, I suppose, that were discussed by Mr. Cotter in terms of how the city could implement a way to charge a tenant individually are just not feasible. What I take away from what you just told me is that the policy of the city of Syracuse with respect to individuals who are facing this problem is indifference. I don't believe that's fair. Because the consequences of following that policy are requesting and attending a hearing with respect to an obligation that's already been satisfied and, you know, taking time off from work. That's an option that's available to the tenant, but it doesn't put the onus on the tenant to complete those tasks. At the end of the day, it's still the landowner who is responsible. The landlord might be responsible, but if the tenant doesn't do anything, the consequences fall foursquare on the tenant. The water's cut off and the home is uninhabitable. So the denizen and her family are in a homeless shelter sleeping on the street. Without getting too off track, there are certainly steps that the city has in place to prevent anything like that from happening. Other than turning on the water. They have homeless shelters available? No, but we have programs. We work with local groups, especially, to make sure that that is prevented. So if it's a case where a landlord's not paying, then there are local groups that we work with to try to facilitate the payment of that. Does the ordinance permit at the hearing, is there any relief for a tenant who goes in and says, I can't pay the whole bill that's due, but here's the records that I paid my $600 a month,  Is there any basis to believe, then, that the water would get turned on for the whole building? It could, in theory. What's the basis? It's an independent officer who – the independent officer makes – In the ordinance, it says that, right? The ordinance gives the authority to the independent hearing officer, and then the commissioner of water is bound by whatever that person determined. Do you have any reason to believe that that would actually happen? It could. But do you know what it – does it? I don't know specifically of any – Under the statutory formulation, is there anything – I mean, what is the hearing about? The question is, you can cut off the water as a matter of law if the landlord doesn't pay. Now, the hearing – the tenant requests a hearing and comes down to the hearing. What is the tenant doing other than requesting some kind of mercy? The tenant can certainly request additional time for payment of the bill, which would extend the water. The water would still be on. But, excuse me, the tenant has no obligation to pay the bill. You've told us that several times. So why does the tenant have to come down and promise to pay in installments or anything of that sort? Why is it on the tenant? Well, it's technically on the landlord, but the tenant, I guess, is in the situation. It sounds to me like everything you're saying is confirming what Mr. Cotter argues. You're saying, oh, technically it's on the landlord, but ha, ha, ha, we know it's really on the tenant because the tenant is the one who's bearing the pain. If the pain is attending. The pain is not having water. Well, attending the hearing, though, would prevent the consequence of having the water turned off. Why do we even think that? The hearing – I mean, I understand if you're the landlord and you come down and say, what's wrong with you people? You say, I didn't pay the bill. Here's my canceled check. Then the hearing can say, oh, I guess we were wrong. Our bad. Turn the water back on. If the landlord goes down and says, I didn't pay the bill, but I'm here for a hearing, is there anything that says the independent hearing officer has the ability to say, oh, you're a very nice man, we're just going to forgive the bill? No, but the independent – there's nothing that says or doesn't say that. But the independent hearing officer also has the ability to negotiate the water bill, which happens a lot with delinquent taxes as well. So they can say, if someone reports that there was some issue or they thought that there was a misread or they simply can't afford to pay the bill, then they can negotiate down their water bill at that time. So would the tenant who requested the hearing have to sit through these negotiation sessions? I suppose if they happened at the hearing. Sorry? I suppose if they happened at the hearing. They're public. Once you sign up, then yes. But it sounds to me like you're conceding that the burden is really on the tenant at this point to either pay the bill or invoke the hearing. I think the burden is not on the tenant. So there's no legal responsibility of the tenant to pay. There's no, I guess, requirement by the city of Syracuse for tenants to pay. Like I said before. But if the tenant doesn't do that, the water gets shut off. You've told us a half dozen times. So I guess since I only have no time, if I can just recap briefly. So the question that's before you is whether or not the policy is reasonably related to a legitimate state objective, which is collecting unpaid water bills. And our brief outlines them. I have four major points. One is that the different treatment allows the city to place the liens, as you discussed before, the differentiation between the property owner and the tenant. Also, there's the transitory nature of tenants. It's very difficult. We don't have the same legal remedies that we have with the tenant as we do with the property owner. The third point is that many of the buildings in the city of Syracuse are faced with the single pipe issue. So they are not capable of having the multiple reed within the structure. And lastly, that water ‑‑ excuse me. Oh, that this policy also encourages the water account holders to behave financially responsibly. So in theory, getting responsible tenants, them staying on top of their bills, et cetera. Thank you. Okay. Just to be sure, you have not argued in your brief that an alternate way that we could affirm this decision is by finding that there is no property interest. The district court found there was a property interest, and you have not challenged that finding. Is that right? We have not challenged it. Thank you. Mr. Conner, you have reserved two minutes. Thank you, Your Honor. I just want to focus on two quick points. The city mentioned that they don't force tenants to pay the bill. If you're a tenant and you receive one of these notices, I think as you recognize, you're left with the unenviable position of either you pay the bill, you hope your landlord pays it, you hope someone else pays it, or your house is getting condemned and either you're going to have to go to a homeless shelter or find somewhere else to live. So although the ordinance doesn't specifically require a tenant to pay, it's implicit in the ordinances that they're using the tenants, as I mentioned before, as a kind of pawn in their cruel collection game. The second point would be that tenants, especially Ms. Winston, was already paying her water portion as part of her bill. She paid her rent every single month. So holding her accountable and having her pay her landlord's debt would have her pay twice for something she already paid. This just simply is an immoral and irrational policy, and we'd ask that this court reverse the district court order of dismissal and remand for further proceedings. Thank you. Rule reserve decision.